UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN MICCICHE,

Plaintiff,

v.

CITY OF FEDERAL WAY, *et al.*,

Defendants.

No. C13-1815RSL

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on "Defendants' Motion for Summary Judgment." Dkt. # 18. Defendants seek judgment as a matter of law on all of plaintiff's constitutional and tort claims arising out of a search and arrest at plaintiff's home on October 13, 2010. Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It need not "produce evidence showing the absence of a genuine issue of material fact" but instead may discharge its burden under Rule 56 by "pointing out ... that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-

moving party fails to designate "specific facts showing that there is a genuine issue for trial." Id. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient:" the opposing party must present probative evidence in support of its claim or defense. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (internal citations omitted).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and taking the evidence in the light most favorable to plaintiff,[1] the Court finds as follows:

## BACKGROUND

Shortly after 1:00 am on October 13, 2010, Bobbie Reed called 911 to report the sounds of a fight happening in her neighborhood. She heard "a lot of breakage of glass and things being thrown like wood and metal and screaming and yelling and threats." Decl. of Ann E. Trivett (Dkt. # 19), Ex. A at 4. She was concerned that the man who lived alone behind her, who she believed was named John and was disabled, might get hurt. Id. at 4-6. The breakage and screaming continued for approximately twenty minutes, stopped, then started again. At one point, she heard "I am going to kill you" and again called 911. Id. at 8. Officers Tilford and Vanruth were dispatched to the scene at 1:16 am. They drove by the houses behind Ms. Reed's home, but were unable to see or hear anything suspicious in the area. They made contact with Ms. Reed, who described John's house to them. Id. at 11.

Officers Tilford and Vanruth arrived at plaintiff's house at 1:37 am. Decl. of

[1] Neither defendants' statement of the facts nor their arguments accurately characterize plaintiff's version of the events of October 13, 2010, or take the evidence in a light that is most favorable to plaintiff.

Travis Tilford (Dkt. # 21), Ex. C. All appeared quiet from the outside. Id. at Ex. B. Plaintiff was asleep on the couch in his living room: if the officers knocked or announced their presence, he did not hear them. Plaintiff woke when his front door burst open. Plaintiff is unclear how many people came through the door, but he was tackled, thrown into his entertainment center, dragged from the house, toppled over a wood splitter, and slammed into the side of his van. He was taken to the ground, and the officers asked him who he was. Plaintiff said something to the effect of "You know who I am. You guys all know who I am." He was knocked out, and woke to find himself handcuffed and in the back of the patrol car. Decl. of Ann E. Trivett (Dkt. # 19), Ex. C at 55-60. Plaintiff became aware that his assailants were police officers when he was dragged out of the house and saw the patrol car. Id. at 59.

Ten minutes after arriving at the house, Officer Vanruth called for assistance. Decl. of Travis Tilford (Dkt. # 21), Ex. C. While Officer Tilford stayed with plaintiff, Officers Vanruth, Orta, and Purcella entered and searched plaintiff's house. The glass on the front door was broken and there were signs of a physical altercation. Decl. of Scott Orta (Dkt. # 23), Ex. A. No one else was found in the house, although the officers found a number of guns in a locked room.

## DISCUSSION

### A. Fourth Amendment Claims Under § 1983

Plaintiff asserts that Officers Tilford and Vanruth unlawfully entered his home without a warrant and used excessive force in effecting his arrest in violation of the Fourth Amendment to the United States Constitution.

#### 1. Warrantless Entry

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. When officers leave the common thoroughfare and enter areas protected by the Fourth Amendments, their "leave to gather information is sharply circumscribed." Florida v.

Jardines, __ U.S. __, 133 S. Ct. 1409, 1415 (2013). In the absence of a warrant, entry into and searches of the home and the surrounding curtilage are "presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980). In order to justify a warrantless search to which the homeowner has not consented,

> officers must have either probable cause and exigent circumstances or an emergency sufficient to justify the entry. These exceptions to the warrant requirement are narrow and their boundaries are rigorously guarded. The police must show that a warrant could not have been obtained in time, and must demonstrate specific and articulable facts to justify the finding of either exigent circumstances or emergency.

Sandoval v. Las Vegas Metro. Police Dep't, 756 F.3d 1154, 1161 (9th Cir. 2014) (internal citations and quotation marks omitted).

**a. Exigent Circumstances**

The exigency exception to the warrant requirement applies when officers have "both probable cause to believe that a crime has been or is being committed and a reasonable belief that their entry is necessary to prevent . . . the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." Hopkins v. Bonvicino, 573 F.3d 752, 763 (9th Cir. 2009) (internal quotation marks omitted). To determine whether Officers Tilford and Vanruth had probable cause to enter plaintiff's house (or, for that matter, to approach the front door and shine a light inside), the Court considers the totality of the circumstances known to the officers at the time. U.S. v. Alaimalo, 313 F.3d 1188, 1193 (9th Cir. 2002). Taking the evidence in the light most favorable to plaintiff, the officers knew only that a neighbor had reported hearing a loud argument between two males involving the throwing of objects and the threat "I will kill you," and that she thought the sounds came from plaintiff's house. Decl. of Travis Tilford (Dkt. # 21), Ex. C; Decl. of Ann E. Trivett (Dkt. # 19), Ex. A at 11. Absent some physical evidence to corroborate the neighbor's hunch, however, the 911 call does not, in and of itself establish a fair probability or substantial

chance that criminal activity was occurring at plaintiff's house. In Murdock v. Stout, 54 F.3d 1437 (9th Cir. 1995), the Ninth Circuit had occasion to evaluate probable cause in the context of a report that a young person was seen running from a neighbor's house. When the officer's arrived on the scene, they found that a sliding door in the back yard was open approximately 8-10 inches. The Ninth Circuit determined that those two facts, standing alone, are equivocal evidence of a burglary and did not justify a warrantless entry. Id. at 1441-42. It was only after the officers developed additional facts giving rise to a concern that a resident was or should have been in the house but was unresponsive that probable cause to suspect foul play arose. See also Morales v. City of Delano, 852 F. Supp.2d 1253, 1264 (E.D. Cal. 2012) (neighbor's report that a door was ajar and lights were on insufficient to establish probable cause where there was no "additional information to tip the scales in favor of determining there was an exigent circumstance.").

In this case, the report the officers received was one of a raucous argument, while the scene that greeted the officers when they arrived at plaintiff's house was one of absolute calm.[2] There was no one to be seen, no yelling, nothing broken or thrown, and a quiet house.[3] Assuming the officers knocked to announce their presence, the fact that plaintiff did not respond immediately at 1:00 in the morning does not give rise to a reasonable inference of criminal activity. The mere report of an argument and heated threats did not justify a warrantless entry into and/or search of plaintiff's home in the absence of any additional evidence suggesting exigency.

---

[2] Nor had the officers seen anything suspicious when they drove by plaintiff's house a few minutes earlier.

[3] Defendants argue that entry was justified by "plaintiff's drunken state, plaintiff's broken window, the blood on plaintiff and his doorway, plaintiff's refusal to identify himself, plaintiff's refusal to state whether anyone else was inside his home, plaintiff's aggressive demeanor, and the disarray seen inside his home." Motion (Dkt. # 18) at 13. All of these circumstances were either unknown at the time the officers approached the house or are disputed.

**b. Emergent Circumstances**

The emergency exception to the warrant requirement "is derived from police officers' community caretaker function, allowing them to enter a home when an emergency which threatens physical harm is presented." Espinosa v. City and County of San Francisco, 598 F.3d 528, 534 (9th Cir. 2010). In order to justify a warrantless search because there is a perceived emergency:

> (1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.
>
> (2) The search must not be primarily motivated by intent to arrest and seize evidence.
>
> (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

U.S. v. Stafford, 416 F.3d 1068, 1073-74 (9th Cir. 2005). For the reasons discussed above, the officers lacked a reasonable basis to believe that the argument Ms. Reed reported was associated with plaintiff's home or otherwise justified a warrantless entry.

**2. Excessive Force**

Defendants' description of plaintiff's arrest is a sanitized version of events having only a passing similarity to the scene and events described by plaintiff at his deposition. Defendants make no attempt to explain why it would be reasonable to bull rush a person who just woke up, throw him around the living room, drag him from his home, slam him into a car, and knock him unconscious without ever ascertaining whether he was involved in (or knew of) a crime, whether he posed a threat to anyone, whether he (as Ms. Reed feared) were the victim, or any other circumstances that made the use of force – any force – reasonable. Defendants are not entitled to judgment as a matter of law on the excessive force claim.

**3. Unreasonable Search**

Plaintiff's unreasonable search claim is derivative of his unlawful entry claim. If the jury finds that the officers' warrantless entry was unjustified, the subsequent search of the premises was also unlawful.

**4. False Arrest**

If the jury accepts plaintiff's version of the events of October 13, 2010, there would be no probable cause for arresting plaintiff for obstruction of justice. This claim remains.

**5. Qualified Immunity**

Defendants claim that they are entitled to qualified immunity from plaintiff's unlawful search and seizure and excessive force claims. Taking the evidence in the light most favorable to plaintiff, no reasonable officer could have believed, in light of the settled law in the areas of warrantless entries and excessive force, that their conduct did not violate clearly established constitutional rights. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Gasho v. United States, 39 F.3d 1420, 1438 (9th Cir. 1994).

**6. Municipal Liability Under § 1983**

A local government entity cannot be held liable under § 1983 simply because its employee violated plaintiff's constitutional rights. Rather, a municipality such as the City of Federal Way may be held liable for constitutional violations only when they occur as a result of the government's official "policy or custom." Monell v. New York City Dept. Soc. Servs., 436 U.S. 658, 694 (1978). This rule ensures that municipalities are liable only for "acts that are, properly speaking, acts of the municipality." Pembauer, 475 U.S. at 480 (internal quotation marks omitted). Although discrete decisions by a government official with ultimate authority on a matter may serve as "policymaking" by the government (Pembauer, 475 U.S. at 481), the acts of subordinate employees, such as Officers Tilford and Vanruth in this case, are generally insufficient to create municipal liability under § 1983 (Monell, 436 U.S. at 694). Plaintiff has not attempted to show that Officers Tilford and/or Vanruth could be considered policymakers for

the City of Federal Way or that their actions reflected "widespread practices or evidence of repeated constitutional violations" that could properly be laid at the employer's door. Nadell v. Las Vegas Metro. Police Dept., 268 F.3d 924, 929 (9th Cir. 2001) (internal quotation marks omitted). Plaintiff has not raised a genuine issue of fact that would preclude judgment in the municipality's favor.

**B. Fifth and Fourteenth Amendment Claims Under § 1983**

Plaintiff has not opposed defendants' motion for summary judgment regarding his Fifth and Fourteenth Amendment claims or otherwise provided evidence raising a genuine issue of fact regarding those claims.

**C. Trespass**

Defendants argue that plaintiff's claim of trespass fails because Officers Tilford and Vanruth had or reasonably believed they had authority to enter plaintiff's home and the surrounding curtilage. While the exact extent of the area protected by the Fourth Amendment has not been established in this case, taking the evidence in the light most favorable to plaintiff, the officers did not have, and could not reasonably have believed that they had, a right to enter the home based on the totality of the circumstances.

**D. Other State Law Claims**

Plaintiff has not opposed defendants' motion for summary judgment regarding his negligence, negligent training/supervision/retention, outrage, assault, battery, false arrest, false imprisonment, and state constitutional claims.

**CONCLUSION**

For all of the foregoing reasons, defendants' motion for summary judgment (Dkt. # 18) is GRANTED in part. Plaintiff's claims against the City of Federal Way and his state law claims other than trespass are DISMISSED. Plaintiff's Fourth Amendment claims against Officers Tilford and Vanruth may proceed.

Dated this 24th day of November, 2014.

Robert S. Lasnik
United States District Judge